```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA

JOHN CRISSY,                    )
                                )
          Plaintiff,            )
                                )
v.                              )    Case No. CIV-18-381-RAW-KEW
                                )
COMMISSIONER OF THE SOCIAL      )
SECURITY ADMINISTRATION,        )
                                )
          Defendant.            )
```

## REPORT AND RECOMMENDATION

Plaintiff John Crissy (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act.  Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled.  For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 47 years old at the time of the ALJ's decision. Claimant completed his high school education and a welding course. Claimant has worked in the past as a welder. Claimant alleges an inability to work beginning July 26, 2016 due to limitations

3

resulting from depression, anxiety, and posttraumatic stress disorder ("PTSD").

## Procedural History

On July 7, 2016, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On July 9, 2016, Claimant also filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge Larry D. Shepherd ("ALJ") on September 6, 2017 in Oklahoma City, Oklahoma. On February 13, 2018, the ALJ issued an unfavorable decision. The Appeals Council denied review on September 27, 2018. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform light work with limitations.

4

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly weigh the opinion of the consultative examiner; and (2) failing to include adequate limitations for Claimant's lapses in concentration and memory in the RFC.

**Consideration of the Consultative Physician's Opinion**

In his decision, the ALJ determined Claimant suffered from the severe impairments of hypertension, hyperlipidemia, obesity, chronic obstructive pulmonary disease ("COPD"), gastroesophageal reflex disease ("GERD"), back disorder, history of deep vein thrombosis, history of pulmonary embolism, major depressive disorder, anxiety, and posttraumatic stress disorder ("PTSD"). (Tr. 18). The ALJ concluded that Claimant retained the RFC to perform light work. In so doing, the ALJ determined Claimant could lift/carry 20 pounds occasionally and ten pounds frequently; could sit for about six hours during an eight hour workday and stand/walk for six hours during an eight hour workday; occasionally climb, balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to dusts, fumes, gases, odors, and poor ventilation; could understand, remember, and carry out simple, routine, and repetitive tasks; could relate to supervisors and co-

workers on a superficial work basis; could have no contact with the general public; and could adapt to a work situation. (Tr. 20).

After consulting with a vocational expert, the ALJ concluded Claimant could not perform his past relevant work but could perform the representative jobs of bagger, package sorter, and hand packager, all of which were found to exist in sufficient numbers in the national economy. (Tr. 27). As a result, the ALJ found Claimant was not under a disability from July 26, 2016 through the date of the decision. Id.

Claimant contends that the ALJ failed to properly weigh the opinion of Dr. Dana D. Foley, a consultative psychological examiner. On October 22, 2016, Dr. Foley conducted a psychological consultative examination of Claimant and issued a report. Dr. Foley noted Claimant was being treated for mental health issues by Mental Health of Southern Oklahoma and the treatment was "somewhat effective." He had one inpatient hospitalization "because he thought about committing suicide."

Claimant attributed his mental health problems to the divorce of his parents and his childhood. (Tr. 872). He avoided people and felt depressed. His sleep was erratic with no appetite or sex

6

drive. He spends the day watching televisions, trying to sleep, and taking care of his dogs.

Claimant reported sexual abuse when he was 13-15 years of age. He told his mother but she did not believe him. He did not report the activity to anyone else. (Tr. 873).

Dr. Foley noted Claimant was appropriately dressed and groomed, was alert and oriented in all four spheres, had good attention, had speech that was normal in rate, rhythm, and volume, but psychomotor retardation was noted. Claimant had an adequate fund of information and appeared of average intelligence. He showed adequate concentration and memory functioning. He presented with a depressed mood and affect. His thought processes were clear, coherent, linear, and goal directed. His thought content was appropriate. He had no history of delusions or hallucinations. (Tr. 874). Claimant's judgment appeared reason-based, logical, and practical. His insight was accurate and he did not report any difficulty with impulse control. He appeared capable of managing his own finances and business affairs.

Dr. Foley diagnosed Claimant with PTSD, Major Depression, recurrent, moderate, and Cannabis Use Disorder, moderate. He concluded his report with the following narrative statement:

> John Crissy has a long history of depression

and ineffective functioning in several settings. He now shares a history of sexual abuse which is seen as fairly consistent with his life history. His depression has increased and he has received treatment and has had one hospitalization. He appears to have impairment in his social and occupational functioning relating to his mental health issues and physical problems.

(Tr. 875).

The ALJ summarized Dr. Foley's as follows:

Consultative examiner, Dana D. Foley, Ph.D., examined the claimant on October 22, 2016. The claimant was noted as clean with adequate grooming. He was cooperative, polite, and pleasant during the interview. He appeared to be a reliable historian. The claimant reported a history of treatment for depression and anxiety. He stated that he was also diagnosed with PTSD from childhood trauma. The claimant acknowledged that he could manage his own activities of daily living. On examination, the claimant had appropriate dress and grooming. He was alert and oriented in all four spheres. The claimant had normal speech. His cognitive functioning was adequate with average intelligence. The claimant showed adequate concentration and memory functioning. His mood was depressed, and he demonstrated some range of affect during the interview. The claimant's thought processes were clear, coherent, linear, and goal directed. His thought content was appropriate. The claimant's insight and judgment were intact. The claimant was noted as appearing to have an impairment in his social and occupational functioning related to his mental health issues and physical problems (Exhibit C8F/1-5).

(Tr. 24).

Claimant contends the ALJ's assessment of Dr. Foley's

opinion is deficient because he did not state what weight he was attributing to the opinion. Additionally, Claimant states that the ALJ omitted information from the recitation of Dr. Foley's opinion in the decision which supported a finding of disability. Namely, he omitted Dr. Foley's finding that Claimant demonstrated psychomotor retardation and that his depression had increased, he is receiving treatment, and he had one hospitalization.

Defendant argues that Dr. Foley's findings were on the whole made a part of the ALJ's RFC assessment. The state agency physicians whose opinions the ALJ gave "great weight" had reviewed Dr. Foley's opinion and noted his finding of psychomotor retardation.

While Claimant characterizes the finding of psychomotor retardation as a new diagnosis that needed to be addressed by the ALJ, this Court agrees with Defendant that Claimant is misapprehending the reference to psychomotor retardation, instead believing it to be an impairment upon intellectual functioning. This is evidenced by Claimant's urging to remand to permit the ALJ to order additional testing including the Wechsler Adult Intelligence Scale test. As Defendant references, psychomotor retardation refers to "[a] generalized slowing of physical and mental reactions" not to a slowing of intellectual functioning as suggested by Claimant. *Taber's Cyclopedic Medical Dictionary* at

9

1809 (Donald Venes et al. eds., 20th ed. 2005). The inclusion of this term did not trigger a duty to develop the record as erroneously suggested by Claimant.

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. Doyle v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. § 416.927(c). He must provide specific, legitimate reasons for rejecting any such opinions. The ALJ must also give consideration to several factors in weighing any medical opinion. Id.; 20 C.F.R. § 416.927(d)(1)-(6). Clearly, the ALJ considered Dr. Foley's opinion and did not reject it since he relied upon the state agency physicians who relied upon Dr. Foley's opinion. The ALJ incorporated Dr. Foley's findings in his RFC even if he did not expressly weigh the opinion.

"'It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions,' including the opinions of medical consultants." Mays v. Colvin, 739 F.3d 569, 578-79 (10th Cir. 2014) quoting Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted). "But the need for express analysis is weakened '[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC.' Id. at 1162. And an ALJ's failure to weigh a medical opinion

10

involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity. *See id.* at 1162-63. In that case, the claimant is not prejudiced 'because giving greater weight to [the opinion] would not have helped her.' Id*.* at 1163." Id. Since the incorporation of Dr. Foley's opinion would not have significantly altered Claimant's RFC given that his opinion was considered through the state agency physicians, this Court finds only harmless error in the failure to weigh the opinion.

Claimant also contends the ALJ should not have given the opinions of the state agency physicians, Dr. Laura Lochner and Dr. Burnard Pearce, "great weight" because they are non-examining, non-treating physicians. The ALJ was within his province to consider and give appropriate weight to the state agency reviewing physicians. He concluded that the opinions were "consistent with and supported by the medical evidence of record" including Claimant's "history of conservative management for complaints of anxiety and depression" and his "largely normal mental status examinations." (Tr. 25). Such findings are appropriate under the regulations. 20 C.F.R. § 404.1527(c)(3) and (4).

### RFC Determination

Claimant contends the ALJ failed to include limitations for lapses in concentration and memory in the RFC. The ALJ, in fact,

11

recognized this limitation in the decision in stating

> [T]he claimant's PTSD, anxiety and depressive disorder, with the attendant lapse in concentration and memory, would preclude him from more than simple work. His contact with others would further be limited to prevent an exacerbation of his symptoms.]

(Tr. 25).

To that end, the ALJ limited Claimant to only simple, routine, and repetitive tasks. Contact with others was limited to superficial interactions with supervisors and co-workers and no interaction with the general public. (Tr. 20).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However,

12

there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence and the limitation upon Claimant's concentration and memory was adequately accommodated.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of March, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE